that decision about other district court judges with us. That said, first case up is United States v. Harris. We will hear first from Mr. Raleigh. Oh, I'm sorry. We've already heard from Mr. Raleigh and decided that in lieu of oral argument. We will hear from Mr. Raleigh and King v. Pridmore. At least you made it to argument, the oral argument, as opposed to getting an opinion in lieu of argument. Chief Judge Karnes, Associate Judges, may it please the court. My name is Richard Ryle and I represent the appellant Trinell King. King fully cooperated with the Warrior Police Department to help them capture Donovan Brown, an armed appellant at large. King had only violated minor traffic offenses and maybe the terms of his probation by driving his girlfriend's car. How is there not a violation in terms of his probation? You can't hang with convicted felons. Well, Your Honor, Mr. King did not know Mr. Brown's status as a felon. I thought he knew he'd just gotten out of prison. The point that I was trying to make is that it was really not up to these officers to say whether he violated his probation or not. Yeah, but there's probable cause to believe he did. They can arrest him for that. Sure. Your Honor, I have no dispute with that. I think we've conceded in our briefs before and after that there was probable, there was reasonable suspicion to stop, probable cause to detain. And certainly the officers at the scene were justified in using force after a gun was pulled on them by Mr. Brown. But in exchange for his help, the Warrior Police Department treated King, a living man, as a tool and a pawn. They threatened to hurt him. They threatened to frame him. And they recklessly thrust him into danger. Your argument in brief about they threatened to hurt him physically is based on your interpretation of what he says they said, which is the facts we take here. But as either their brief or I believe it was the district court even said, look, if he said, we're going to hit you with this charge, that's not a threat of physical force. You're going to start fucking us over, we'll fuck over you, implies that he's capable of doing something to them that they would do to him, which doesn't sound like physical force. Or if it does sound like physical force, they're entirely entitled to respond to physical force with physical force. What's your answer to that? Well, Your Honor, I think that if you look at the words themselves in a very sterile environment, I think that you could come up with many inferences from those facts. But the bottom line is that Mr. King testified that the conversation, which went on for almost a two-hour period, started turning sour. People started getting frustrated. He told them that he was never asked by the defendants at the scene whether I wanted to go pick up Brown. Instead, the defendants kept telling me I had to go. At no time did the defendants tell me I was free to leave, that I could just go to jail. He was still handcuffed in the backseat of this vehicle. Well, that may still be his interpretation of that language, but he testified to that language. This is the language from which I drew the inference that they were threatening me with physical force. And if that's not a reasonable inference from that, or if not every reasonable police officer would draw that inference from that language, then it seems to me like your case is in trouble. Am I wrong about that? Yes, Your Honor, with respect. The only mention of physical force is in his later filed affidavit, not in his deposition. He doesn't mention any physical force at all. But, Your Honor, do we really have to require somebody to say, hey, I'm going to hurt you before somebody implies or believes that they're in physical force? It has to be objective, not subjective. Absolutely, it has to be objective. And I believe that most people, most law enforcement officers, would know that they are putting a young man, a young black man in a white neighborhood, after being interrogated for six hours after he's done everything that he could to help them. He says they're getting testy, they're getting angry, everybody's getting frustrated. He's surrounded. He tells them, can y'all stop doing this and get me wherever y'all got to do? That's him telling them, you can take me to jail. There's some disputed issues of fact about that because the officer's testimony is quite to the contrary. Absolutely. The officer said that this is all Mr. King's idea and that they were ready to go to lunch. But at the same time, if they were ready to let Mr. King go, why do they still have him in the back of a vehicle? Why do they still have him handcuffed behind his back? Why do they still have his cell phone? Your Honor, this is summary judgment. The inferences are to be weighed in Mr. King's favor. You said every reasonable officer would interpret that language as a threat of force. That's the standard? Your Honor, again, it's an objective standard. I know. Every reasonable officer. Well, and again, the evidence has to be construed in the light most favorable to the non-movement. I understand all that. But the standard we apply to the facts drawn from the evidence construed in the light most movement is every reasonable officer would or would not have, correct? From those facts? Yes, Your Honor. Okay. And the point is that every reasonable officer would. What purpose would an officer have to use that kind of language? To persuade him to cooperate under threat of prosecution or charging. He had been cooperating. He had been cooperating without any problem. Well, then what? Well, what possible reason would they have for threatening him with physical force if he had been cooperating? The fact that he had been cooperating doesn't tell us whether or not that was a threat of physical force because if he's cooperating, there's no reason to threaten him with charges or physical force. He didn't want to participate in this very dangerous sting, Your Honor. I know it. And a lot of times people don't want to serve as confidential informant. But when threatened with 20 years in prison or 30 years in prison or 10 years in prison, they often decide to do so. Sir, and it's fair game to charge somebody, to threaten somebody and say, we're going to tow this car. We're going to try to do everything we can to make sure your probation gets revoked. We're going to take you in. Something they had never done. These officers said they've never taken anybody in and arrested them for tag, for failure to have a license. And again, these officers said, hey, we're going to let them go. So just to make sure we're on the same page, you would agree that your case rises or falls on whether the statements by the officers were threats of physical force? Your Honor, it's not just the statements. Okay, what else is there? Well, let me ask it to you this way. You would agree that your case rises or falls on whether there was physical force involved? Is that fair to say or no? No, Your Honor. What else is there? The threat of physical force and the threat of false charges. And Your Honor, there's a big difference between, we've been here talking for eight minutes. Mr. King was in that vehicle 10 times longer than this. The conversation went from a very amicable scenario to a very, very horrible scenario. What is your best case for false charges? Well, Your Honor, the language says that they're going to put some charges on me. Putting charges on him in this context means something that wasn't deserved. Mr. King said he was ready to go to jail. But what is your best case for there being a case for your client if false charges were threatened? Well, Your Honor, I think Mr. King said that even if he was talking about false charges, that he was prepared to defend against those false charges. It got to be a point where he kept saying, I want to go, or do what you've got to do, and they kept saying, no, you have to do this. And Your Honor, there's a big difference between somebody saying, hey, well, you know, we need to remember, all these officers have body cams, they all have cell phones. Mr. King had a cell phone there. They could have, every police officer in this country could record somebody if it is a willing agreement and just not... That's just an argument for your client's statement of what happened having been credible or their statement that it didn't happen not being credible. We're assuming that to some of the judgment. And you just said, Mr. King said he was willing and able to defend against false charges. That means that no threat of false charges coerced him to do anything. By his own words that you've repeated to us. Your Honor, I think that we are parsing a very evolving situation. Evolving or not, respond to me that if your client said, false charges, smarges, I was prepared to defend against false charges. It was the threat of physical force that overcame my will. Yes, Your Honor. Why doesn't that take the false charges component out? You know, I guess theoretically it might. But it is something that is on his mind when he's sitting here and these officers are pressing him and pressing him and pressing him. And Your Honor, there's a big difference. May I briefly conclude? There is a big difference between these officers saying, hey, you know, we can arrest you for this. We can get you for your probation. We could fuck you over if you want us, if you fuck us over. There's a big difference between that and them leaning over a young man after two hours of interrogation and saying, if you fuck us over, we're going to fuck you over. Therefore, he had something he could do to them and they were warning him that if he did something to them, they would do the same thing to him. Your Honor, I think an inference could be drawn that these officers believe that any type of cooperation withheld is fucking them over. Well, the question is whether I thought you told us every reasonable officer would have drawn that inference. Your Honor, again, the whole context. You can't take this and make it a very clean, sterile argument. Any juror, most police officers would believe there's no call to even use that kind of language in this setting. Forced language like that is very important in police settings, yes, in the situations where we have hostages, in a situation where, for example, when Officer Pridmore was pulling Mr. King out of the car, he used very harsh and coarse language with him and that's appropriate because the shock and awe is appropriate. You've passed your conclusion. We'll give you a full five minutes on reply and hear now from Mr. Sides. May it please the Court. My name is Terry Sides. I represent two of the appellees, Corey Archer and Ricky Pridmore. There are three reasons why the plaintiff loses this appeal. At the time when this incident occurred in 2015, it was not clearly established by either the Supreme Court or this Court that anything less than an intent and purpose to cause harm is enough to prove a Fourteenth Amendment violation for substance abuse process and there's no evidence. What about the Thirteenth Amendment? The Thirteenth Amendment, at the time that this happened, it was not clearly established by either the Supreme Court or this Court that what these officers did and said to the Well, is there a case anywhere that has come close to making this a Thirteenth Amendment violation? My recollection of the record is that all parties in the District Court agreed that this was a case of first impression. You don't think Professor Rich's law review article clearly established? No, sir, we do not. I thought that's probably your answer. As to the Thirteenth Amendment, Judge Vinson, since you brought that up, the Kaminsky case, the United States Supreme Court said in the Kaminsky case that when you perform a civic duty that that is not something that is violative of the Thirteenth Amendment. Alabama has a statute, as do most states and I believe even in the federal system, Alabama has a statute that says that you have a civic and legal duty to assist a police officer. I don't think he has a civic and legal duty to put himself at risk of being shot up. I mean, I think civic and legal duties can go so far but I would say that that's, I just don't agree with that. Do you have some case that suggests that he had a civic and legal duty to put himself at risk and subject himself to being shot five times? No, ma'am, we don't and at the same time, we don't believe that it was clearly established that he did not have a civic and legal duty to perform or to assist the police officers in this event. So that would entitle the officers to qualified immunity at the very least. I disagree with you on that. Secondly, on the Thirteenth Amendment claim, there is, the Supreme Court has made clear that when you have a conceivable means or a choice to avoid the claim compelled service, then that is not a violation of the Thirteenth Amendment. Here, by his own testimony, the plaintiff testified that while it may have been a difficult choice, he wanted to help himself. He wanted to get his girlfriend's car back off of that tow truck. He did not want to go back to jail. He did not want to face the charges that he would face for his probation violation. What are the facts about the probation violation entering into this? He was on probation, obviously, and every person on probation is warned when they're put on probation what the conditions are. Was there any dispute at all in this case about whether he knew that his friend had just gotten out of prison? No, sir. We don't believe so. In fact, the deposition of the plaintiff, in his deposition, he admitted that he understood that he was facing going back to jail for having him in his car and for the driving, the offenses that have been outlined in the record. He understood that that probation could be revoked and he could be returned to jail. He did not want that to happen. He understood that at the time of the conversation with the law enforcement officer. That's what he said in his deposition, yes, sir. He knew he didn't have a license ever, right? Ma'am? He knew he never had a driver's license? Correct. He never contested that. He did present an identification card, but he admitted, I did not have a driver's license, and he admitted he knew that was against the law to be driving and operating that car without a driver's license. Is there any evidence in the record as to whether that would have violated probation? His testimony was that he knew that it would. He understood that. That driving without a license would. Yes, sir. And he knew he was driving a vehicle with no attached, no good tag on it? No tag, no driver's license, no proof of insurance, and it was not his vehicle. He said it belonged to his girlfriend. So for those reasons, we believe that the, on the 13th Amendment claim, that at the very least the officers were entitled to qualified immunity because those things were not clearly established that what they were doing and what they said amounted to a violation. As far as the 14th Amendment claim is concerned, the correct standard is conscious shocking and as the Supreme Court has said, as this court has said many times in a case like this where it is a fast moving set of facts and circumstances akin to a hot pursuit type of In this case, there is zero evidence that the motivation of these officers was anything other than to catch and apprehend this fleeing felon. As the court said in Vaughn v. Cox, when the motivation of the officers is a legitimate government interest, and by the way, it's not disputed in this case at all that these When that is the case, then the qualified immunity, there's no violation. There's no violation of substance use process because that interest is there. Let me ask you about the relationship between Mr. King and Mr. Brown. Mr. Riley's brief says that King and Brown were not good friends. He was only driving him because Brown's girlfriend begged him to, but in his deposition, it looks like the other situation exists. Plaintiff's deposition said he'd known Mr. Brown for 18, 19, or 20 years, grown up together, socialized together, considered him a friend and his homeboy. What is the evidence in the case? That is the evidence that Mr. Brown, I believe, also testified in his deposition as to their lengthy history. They certainly knew each other well enough and were on good enough terms that Mr. Brown called him early that morning and said, drive from Birmingham, Brevard, to come pick me up. And he knew he was a convicted felon? Mr. King knew Mr. Brown was a convicted felon, yes, sir. The 14th Amendment claim fails as the district court correctly determined. She assumed, the district judge assumed, that there had been a violation of the 14th Amendment. We say that there was not a violation, but in any event, it certainly wasn't clearly established at the time in 2015 that what these officers did and what they said to Mr. King constituted a violation of the 14th Amendment. Again, on the issue of clearly established, the question is, was it clearly established at the time to every reasonable police officer that something less than an intent and a purpose to do harm, unrelated to the officer's legitimate interest in apprehending Mr. Brown, could that establish a substantive due process violation and civil liability under Section 1983? Again, the parties agreed there are no controlling cases from the Supreme Court or this court or the Alabama Supreme Court, which show that this was clearly established, and the plaintiff admitted that for purposes of the 14th Amendment claim, that he is trying to get around qualified immunity by arguing on the other ways that clearly established can be shown, but principally the obvious clarity exception to clear controlling case law. As this court knows, that's a very narrow, seldomly applied, difficult exception to satisfy. And one reason I suggest that it is, is because the Supreme Court and this court itself has recognized that the guideposts for a substantive due process violation are very scarce, they're very open-ended, and they're not subject to mechanical application. Given all of that, how can it be said here that what these officers, that every reasonable police officer would have known, that it was beyond debate that what happened here constituted a violation of substantive due process? Let me just make sure I'm clear on the record. The district court had two separate memorandum opinion and orders, and in one, she said Brown called the plaintiff on his phone, and the other one, she says plaintiff called Brown on his phone. But I think the record is that Brown called the plaintiff on his phone, and the police monitored it while they spoke, and actually gave him some signals. What is the record? What does it show? When the district court entered summary judgment on the 13th Amendment claim, she used the Brown. After discovery had been taken and depositions had been had, Mr. King testified that as he was sitting in the back of the police car, Mr. Brown called him. And at that point, we would suggest that's when things sort of changed. That's when these police officers recognized we have an opportunity here where we can catch this very dangerous fleeing felon. We have an opportunity here. They had to exercise quick judgment on the side of that road then and there in order to apprehend this felon who was only about a mile away. And that's when the decision was made. That's when the plan was put forth to try and get him and minimize this risk. Again, that instant judgment that the officers were required to exercise and take at that That's exactly what was happening here. Same type of judgment, instant judgment, that this court recognized and approved of the officers taking in Vaughn v. Cox had to exercise quick judgment on the spot in order to minimize and preclude a risk of safety to the public at large. Putting aside the state law immunity issues for a moment, would you address the state law claims? I know the district court did that on immunity, but do you address the merits or lack thereof? In Leeds v. Hunter, this court said and recognized that the Alabama Supreme Court has largely equated the doctrine of qualified immunity with state agent immunity, meaning that if a defendant is entitled to qualified immunity, then they are entitled to state agent immunity. That is the case we have here. Because these officers are entitled to qualified immunity, they are entitled to state agent immunity on the state law claims. As to the merits of the What's the case that says that? I think you quoted the case, but I missed it. Leeds v. Hunter. It was either Yeah, Leeds v. Hunter. I have it. Okay. Yes. It was when? It was either in 2018 or 2019 from this court. But then again, you've got Taylor. Yes, sir. And we believe that Taylor was wrongly decided. That's not our business right now. We have to assume it's correct unless there's a previous opinion that it's inconsistent with. And we believe there is. All right. We believe there is. In fact, we believe that Taylor created an intra-circuit split, as we addressed in our Row 28 J letter. And the reason for that is prior to Taylor, this court had recognized Alabama's rule of that Alabama law is, even if an officer makes an arrest without probable cause, and therefore there is a violation. The officer is still entitled to state agent immunity under Alabama law if he had arguable probable cause. And when was that? Give me that case again. The two cases in which this court recognized that are Grier v. City of Auburn and Brown v. Huntsville. So we say in light of those previous cases, Taylor was wrongfully decided. And the way Taylor was decided resulted in an intra-circuit split that Taylor should have followed those cases. And therefore, that's why Leeds v. Hunter controls and not Taylor v. Hughes. And Leeds would have had to come out after Crandom because otherwise Crandom would have passed. Absolutely. Yeah. Which it did. Crandom has been a while. Yes, sir. Yes. Okay. Thank you. Mr. Donahue. Three minutes. If it pleases the court, I'm Tim Donahue and I represent Detective Andrew Hill. And on behalf of Detective Hill, he adopts the factional legal arguments just made by Mr. Sides on behalf of Officers Archer and Pridmore. However, I would like to point out very quickly three other additional points. One, on page 22 of Plaintiff's brief, he defines his custodial status and he refers to the case of Knight v. Miami-Dade City. And then he quotes, he says, a person is seized, dot, dot, dot, when by means of physical force and then completes the rest of the quote. However, he leaves out the complete first sentence of that quote from the Knight case which actually states a person is seized under the Fourth Amendment by means of physical force. We don't have a Fourth Amendment case here. A plaintiff voluntarily dismissed his Fourth Amendment claim on documents 5960 and 6901. You're not really contending that when he was handcuffed in the backseat of that car and left there for some period of time, he wasn't seized, are you? He was detained. So the Fourth Amendment doesn't, or no amendment, prohibits detaining people without probable cause, without reasonable cause, without? They have to have probable cause, Your Honor. But what I'm saying is there is no Fourth Amendment claim here. So what difference does it make? He was seized. Well, they're defining his seizure under the Fourth Amendment as opposed to the Fourteenth Amendment. How would you define it under the Fourteenth Amendment? Well, he can't bring a claim for the Fourth Amendment. He's bringing a substantive due process claim. I understand that. And you're saying he wasn't detained for substantive due process purposes. I don't understand that. What's your point? Give me your syllogism. He wasn't detained for substantive due process purposes. You have to be detained. If it's a substantive due process detainee, they have to show harm under Sacramento v. Lewis. And there's no intention of harm here. And so if you weren't seized or in custody, it doesn't matter if you were harmed? No, you have to have the intent. If they threatened him, if they said, if you don't act as bait in this, we're going to shoot you right now, wouldn't he have a Fourteenth Amendment claim? If that's where the case may be, yes. Okay, so why does it matter then whether he was seized for purposes of the Fourteenth Amendment? Okay, I guess if you look at it that way, it doesn't really matter. Okay. Thank you. All right. Mr. Raleigh, you have your full five. A couple points turning to the state law immunity, the state agent immunity. Counsel has suggested there's a split of authority. Your Honor, the Alabama Supreme Court has in the context of arguable probable cause adopted some of the federal courts law on that. But there is no Alabama Supreme Court case that discusses the specific question in this case. And that is this. There are exceptions to state agent immunity. We submit there are three in this case. One is that the Constitution is violated. If there's a violation of law, then a state agent has no authority to act differently. Judge Boudry held, well, you not only have to prove a violation of the Constitution, but you also have to prove qualified immunity. And we've got a good argument for qualified immunity. But that premise is incorrect. There's no Alabama state court case that has made that holding. And quite frankly, it's contrary to the whole point of state agent immunity. State agent immunity does not require the proof of a federal, to get around a federal affirmative defense to win. As a matter of fact, the whole point of federal qualified immunity, I would submit, is that officers in fast situations or even in slow situations should not be punished for a mistaken but reasonable interpretation of the Constitution or other federal statute. Even though it violates the Constitution? Even though it violates the Constitution, yes, Your Honor. Well, I mean, you just said that point ought to be defeated in state court. No, Your Honor. My point is, is that- Well, if qualified immunity means a mistaken but reasonable mistake or interpretation- Correct. Doesn't get you liability. And that's what qualified immunity- In federal court, it doesn't. In state court, it does. And the reason being is twofold. Number one- Does the Constitution require liability if you make a reasonable good faith mistake that violates the Constitution? The Alabama Supreme Court said no. The Alabama Supreme Court- No has the United States Supreme Court or we wouldn't have qualified immunity. If a violation of the Constitution automatically imposed liability once you say there's a violation of the Constitution, there wouldn't be qualified immunity. Qualified immunity means even though you violated the Constitution. Absolutely, Your Honor. Okay. So what you're saying is state agent immunity doesn't apply even though you made a reasonable good faith mistake. State agent immunity, you do not get the defense if you make a reasonable mistake under Alabama law. And there's two reasons for that. Number one, the test itself, the old Kremen test that has been adopted by the legislature has specifically said that a state agent is not entitled to immunity if he or she has mistakenly interpreted the law. That's black letter law in the statute and the case law. Number two- No, what Krenham actually said is they do get immunity unless the Constitution requires otherwise. That's the very first exception. I'm talking about the sixth exception. The sixth exception says that if there is a mistaken interpretation of the law, that that does not provide a defense. So my point is, is that federal qualified immunity is nothing other than an officer's mistaken interpretation of the law. Also, the Alabama Supreme Court in 1998 said that an officer cannot say that they are ignorant of the law and still get immune. That's the case of Slack v. Stream and it's black letter law that if a legislature adopts a court's reasoning by statute, they adopt the court's whole rationale. The whole rationale was, is that officers should not be able to testify later that they were ignorant of something that they should have known. How do you handle leads? I handle leads because that statement with respect was made in dicta. In that case, the court made two holdings and incidentally, it was another Judge Boudry decision. In that case- In that case, and it was a very complicated factual specific case, but basically the court held that one officer did not violate the Constitution and that the other officers, excuse me, one officer did violate the Constitution or at least there was substantial evidence of that and that the others did not. But the clearly established part of the qualified immunity test was not discussed or was not the pin in that case holding. And so there was a general statement, but it was not part of the decision. So, members of the court, the case that we cited in our letter, also the Foster case, both respectfully support the plaintiff's view in this case. May I briefly conclude, Your Honor? One sentence. Your Honor, the founders of our Constitution were concerned about citizens being forced to do the work of government. We see it in the Second Amendment, the third, the fourth, the fifth, after the Civil War, the thirteenth, and the fourteenth. The Constitution, the main right in the Constitution is to not be forced to do government's will and to be left alone. Mr. King could have been taken to jail- All right, that's five sentences I've counted so far. We appreciate that conclusion and we'll take the case under submission. Next case up is Cantu v. City of Dothan.